## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| BETHANY R. SCAER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:25-cv-183-JL-TSM |
| v. | : | |
| | : | |
| ALISON V. MASTIN, Chair, Kearsarge | : | |
| Regional School Board, in her official | : | |
| and individual capacities; KEARSARGE | : | |
| REGIONAL SCHOOL BOARD; and | : | |
| KEARSARGE REGIONAL SCHOOL | : | |
| DISTRICT (SAU #65); | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT AND A PERMANENT INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................................... 2

ARGUMENT ................................................................................................................ 10

   I.  KEARSARGE REGIONAL SCHOOL DISTRICT'S "NO DEROGATORY COMMENTS"
      POLICY IS UNCONSTITUTIONAL IN EVERY GOVERNMENT FORUM. ...................... 11

    A. The First Amendment forbids Defendants from restricting public
       comments at Kearsarge Regional School Board's meeting in an
       unreasonable or viewpoint discriminatory manner................................. 11

    B. Defendants discriminate against disfavored speech and petition on the
       basis of viewpoint.................................................................................. 13

    C. Defendants unreasonably undermine the purpose of the public comment
       period by preventing the public from effectively expressing their wishes
       and ideas about the school district matters under discussion....................... 15

  II.  KEARSARGE REGIONAL SCHOOL DISTRICT'S POLICY IS UNDULY VAGUE,
      GRANTING UNBRIDLED ENFORCEMENT DISCRETION TO SCHOOL OFFICIALS. ....... 17

 III. KEARSARGE REGIONAL SCHOOL DISTRICT'S POLICY SWEEPS OVERBROADLY,
      CHILLING VAST AMOUNTS OF PROTECTED SPEECH ............................................. 20

 IV. SCAER IS ENTITLED TO NOMINAL DAMAGES AND A PERMANENT INJUNCTION .... 22

CONCLUSION .............................................................................................................. 24

CERTIFICATE OF SERVICE ......................................................................................... 25

TABLE OF AUTHORITIES

CASES

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023) ................................................................ 13

*Am. Freedom Def. Initiative v. King Cnty.,*
    904 F.3d 1126 (9th Cir. 2018) ................................................. 14

*Am. Freedom Def. Initiative v. Suburban Mobility Auth.,*
    978 F.3d 481 (6th Cir. 2020) ................................................... 19

*Cohen v. California,*
    403 U.S. 15 (1971) ................................................................... 14

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,*
    473 U.S. 788 (1985) .......................................................... 11, 15

*Cortes-Reyes v. Salas-Quintana,*
    608 F.3d 41 (1st Cir. 2010) ..................................................... 22

*Del Gallo v. Parent,*
    557 F.3d 58 (1st Cir. 2009) ..................................................... 12

*Doe v. Mills,*
    16 F.4th 20 (1st Cir. 2021) ...................................................... 23

*Gooding v. Wilson,*
    405 U.S. 518 (1972) ................................................................. 21

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ........................................................... 18, 19

*Hill v. Colorado,*
    530 U.S. 703 (2000) ................................................................. 18

*Hopper v. City of Pasco,*
    241 F.3d 1067 (9th Cir. 2001) ................................................. 21

*Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't
    of Parks & Rec.,*
    311 F.3d 534 (2d Cir. 2002) ............................................... 11, 12

iii

*Iancu v. Brunetti*,
    588 U.S. 388 (2019) ........................................................................... 14, 15

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021)................................................................. 14

*Marshall v. Amuso*,
    571 F. Supp. 3d 412 (E.D. Pa. 2021)................................................. 14

*Matal v. Tam*,
    582 U.S. 218 (2017) ........................................................................... 13, 14

*Matusick v. Erie Cty. Water Auth.*,
    757 F.3d 31 (2d Cir. 2014)................................................................. 22

*McBreairty v. Sch. Bd. of RSU22*,
    616 F. Supp. 3d 79 (D. Me. 2022) ..................................................... 11, 12

*McCoy v. Town of Pittsfield*,
    59 F.4th 497 (1st Cir. 2023) ............................................................... 13

*McGuire v. Reilly*,
    386 F.3d 45 (1st Cir. 2004)................................................................. 13

*Minn. Voters All. v. Mansky*,
    585 U.S. 1 (2018) ............................................................................... 18, 19, 21

*Moms for Liberty v. Brevard Pub. Sch.*,
    118 F.4th 1324 (11th Cir. 2024)......................................................... 14, 16, 18, 19

*NAACP v. Alabama*,
    377 U.S. 288 (1964) ........................................................................... 20

*People for the Ethical Treatment of Animals v. Tabak*,
    109 F.4th 627 (D.C. Cir. 2024).......................................................... 16, 19

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) ............................................................................. 12

*Police Dep't of Chicago v. Mosley*,
    408 U.S. 92 (1972) ............................................................................. 11

*Pollak v. Wilson*,
　No. 22-CV-49-ABJ, 2024 U.S. Dist. LEXIS 229713
　(D. Wyo. Oct. 25, 2024) .......................................................... 16

*Ridley v. Mass. Bay Transp. Auth.*,
　390 F.3d 65 (1st Cir. 2004) ..................................................... 12

*Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*,
　126 F.4th 773 (1st Cir. 2025) .................................................. 11

*Roman Cath. Diocese v. Cuomo*,
　592 U.S. 14 (2020) ................................................................... 23

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
　699 F.3d 1 (1st Cir. 2012) ....................................................... 23

*Sutliffe v. Epping Sch. Dist.*,
　584 F.3d 314 (1st Cir. 2009) ................................................... 13

*Sutliffe v. Town of Epping*,
　Civil No. 06-cv-474-JL, 2008 U.S. Dist. LEXIS 96179
　(D.N.H. Nov. 13, 2008) ........................................................... 13

*Texas v. Johnson*,
　491 U.S. 397 (1989) ................................................................... 1

*Tirrell v. Edelblut*,
　747 F. Supp. 3d 310 (D.N.H. 2024) ........................... 4, 5, 7, 17

*Tirrell v. Edelblut*,
　748 F. Supp. 3d 19 (D.N.H. 2024) ............................................ 4

*United States v. Mass. Water Res. Auth.*,
　256 F.3d 36 (1st Cir. 2001) ..................................................... 23

*Uzuegbunam v. Preczewski*,
　592 U.S. 279 (2021) ................................................................. 22

*Virginia v. Hicks*,
　539 U.S. 113 (2003) ................................................................. 21

*Westfield High Sch. L.I.F.E. Club v. City of Westfield*,
　249 F. Supp. 2d 98 (D. Mass. 2003) ...................................... 23

*White Coat Waste Project v. Greater Richmond Transit Co.,*
   35 F.4th 179 (4th Cir. 2022)........................................................................ 18

*Young v. Town of Conway,*
   Civil No. 23-cv-00070-JL, 2025 U.S. Dist. LEXIS 95364
   (D.N.H. May 20, 2025) ........................................................................ 23

**STATUTES**

FED. R. CIV. P. 56(a) ........................................................................ 11

N.H. Rev. Stat. Ann. § 193:41 ........................................................................ 3, 5

**OTHER AUTHORITIES**

Merriam-Webster Dictionary ........................................................................ 13

## INTRODUCTION

Kearsarge Regional School Board and its members believe that they can silence anyone who speaks in a way the board finds offensive. Not so. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

The material facts in this lawsuit are undisputed. Defendants admit that the board's "no derogatory comments" policy prohibits citizens delivering public comments to the board from "speak[ing] derogatorily about anyone or anything"; that they deemed Plaintiff Beth Scaer to have violated that policy when she referred to a biologically male student-athlete as a "tall boy"; and that they barred her from finishing her speech as a result. Defendants cannot open up a limited public forum for the public to comment upon school district matters and then censor speakers who use language and express viewpoints that offend the board. Moreover, Defendants' "no derogatory comments" policy is vague, undefined, and inherently subjective. The policy unreasonably prevented Plaintiff from being able to explain her position about the main topic under discussion—whether allowing a male student to play on girls' sports teams was lawful, safe, and fair.

As school officials, Defendants have a duty to educate children about America's civic values, about its Constitution, and about the fundamental rights it guarantees. Defendants themselves, however, require remedial instruction on these points. The

1

Court should end the Kearsarge Regional School District's unconstitutional policy and practice by granting summary judgment for Scaer, declaring the "no derogatory comments" policy unconstitutional, permanently enjoining further enforcement, and awarding Scaer nominal damages for her past harm.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Kearsarge Regional School District—the New Hampshire school administrative unit covering the towns of Bradford, Newbury, New London, Sutton, Springfield, Warner, and Wilmot—has a policy (Policy BEDH) on "Public Comment & Participation at School Board Meetings." Ex. A; *see also* Scaer Decl., ¶¶ 16-19. Under Policy BEDH, the Kearsarge Regional School Board "provide[s] the opportunity for members of the public to comment on school district matters at all regularly scheduled Board meetings" so that "the Board may have opportunity to hear the wishes and ideas of the public." Ex. A at 2-3. Members of the public "may offer comments on agenda items or other District matters (e.g., operations, budget, and other issues directly relating to the District's school policies, programs and operations.)." *Id.* at 4. Speakers are "permitted equal time" to comment, so that each are "allotted 3 minutes per person." *Id.* at 3

Kearsarge Regional School District does not allow audience members to disrupt school board meetings by, for instance, "[s]houting or speaking out of appointed time while someone else has been recognized" or "[a]ny other conduct intended to disrupt the meeting or person speaking." *Id.* at 5. "[A]fter at least two warnings

2

from the Chair," the Chair may direct a person disrupting the meeting to leave and involve law enforcement. *Id.* Likewise, school board "will not tolerate defamatory statements, comments threatening bodily harm, or other unprotected speech." *Id.* at 4. The Chair may rule a speaker who violates this rule as "out of order," and "[r]epeated violations may result in the Chair terminating the speaker's privilege of addressing the Board" before that speaker's three-minute time allotment is complete. *Id.*

In addition to Policy BEDH, Kearsarge Regional School Board also enforces an unwritten rule of order, referred to as "the board's 'no derogatory comments' policy." Ex. C at 1-2; *see also* Scaer Decl., ¶¶ 20-21. The school board's chair, Alison Mastin, described the "no derogatory comments" policy just prior to the start of the public comment period at the board meeting on August 29, 2024. *Id.* This rule mandates that speakers "do not speak derogatorily about anyone or anything." Ex. C at 1.

In July 2024, the New Hampshire legislature passed House Bill 1205: a state law that limited participation in interscholastic women's sports teams to biological females. *See* N.H. Rev. Stat. Ann. § 193:41. Plaintiff Beth Scaer and her husband Stephen[1] advocated for this bill and spoke in its favor at legislative hearings during the spring of 2024. Scaer Decl., ¶¶ 2-7; Stephen Decl. ¶¶ 2-6.

---

[1] Because Stephen Scaer shares a surname with Plaintiff, this brief refers to him as "Stephen" for clarity. "Scaer" refers exclusively to Plaintiff.

On August 22, 2024, a federal court issued a temporary restraining order prohibiting the New Hampshire Department of Education, as well as various school districts and school boards, from enforcing House Bill 1205. *See Tirrell v. Edelblut*, 747 F. Supp. 3d 310 (D.N.H. 2024). Central to that court's reasoning was its findings that the plaintiff had "received treatment to block male puberty and induce female puberty" and therefore, per the court, did not "enjoy the testosterone-driven advantage in average athletic skill that pubescent males enjoy relative to pubescent girls," as well as the court's finding that the plaintiff posed no threat to "safety in girls' sports." *Id.* at 317. A few weeks later, the same court issued a preliminary injunction for similar reasons. *See Tirrell v. Edelblut*, 748 F. Supp. 3d 19, 40-41 (D.N.H. 2024). Kearsarge Regional School District and School Board were not among the districts and school boards restrained and later enjoined by these court orders. *Tirrell*, 747 F. Supp. 3d at 318-19; *Tirrell*, 748 F. Supp. 3d at 47.

On August 15, prior to these court rulings, the Kearsarge Regional School Board voted four to one (with three abstentions) to enforce House Bill 1205. Ex. B at 8; *see also* Scaer Decl., ¶¶ 11-12. During the discussion before the vote, board members noted their reluctance, explaining that "[t]he board decision made this evening is reversible" and that "the law, or at least parts of the law, may also be struck down." Ex. B. at 7-8. They "lamented the ethical implications of voting in support of the house bill," and voted in favor of obeying state law "[w]ith heavy hearts" despite "their personal convictions." *Id.* Defendant Mastin stated that regardless of the

4

vote, "[a]t no point does the board endorse the discrimination [against] students or their rights." *Id.* at 8.

During the previous school year, Kearsarge Regional School District had allowed M.J., a biologically male student, to compete on the track and field team and the varsity girls' soccer team. *See* Ex. C at 1-2; Scaer Decl., ¶¶ 9, 23, 28, 45; Stephen Decl. ¶ 6. In February 2024, M.J., then a sophomore, won the girls' New Hampshire Interscholastic Athletic Association (NHIAA) Division II state title in high jump, beating every biological female who competed in that event. Ex. D; Scaer Decl., ¶¶ 28-29, 45. If Kearsarge Regional School Board followed the requirements of House Bill 1205, M.J. would not have been able to compete as a female athlete on these teams during the 2024-2025 school year. *See* N.H. Rev. Stat. Ann. § 193:41.

Kearsarge Regional School Board's next regularly scheduled public meeting occurred on August 29, 2024, a week after the temporary restraining order issued in *Tirrell*. Ex. C at 1; *Tirrell*, 747 F. Supp. 3d at 319. An "inordinately large number of audience members" attended this meeting to advocate either for reconsidering the board's August 15 vote or for adhering to its prior decision to obey state law. Ex. C at 1, 3; Scaer Decl., ¶¶ 14-15; Stephen Decl. ¶¶ 8-10. Many people brought signs, which they displayed both in the parking lot and in the meeting room during the meeting, stating messages such as "Let [M.J.] Play" (using M.J.'s first name) or "Save Women's Sports." Scaer Decl., ¶ 15; Stephen Decl. ¶ 9. Plaintiff Beth Scaer and her husband attended the meeting and displayed signs in the parking lot,

although they did not bring their signs into the meeting room. Scaer Decl., ¶ 15; Stephen Decl. ¶ 9.

A longer-than-normal public comment session was the first order of business on the meeting's agenda. Ex. C at 1. The board's chair, Defendant Mastin, announced the rules of order before public comment began. *Id.* One rule that Mastin explained was the board's "no derogatory comments" policy, which prohibits commenters from "speak[ing] derogatorily about anyone or anything." *Id.* at 1-2.

Seventeen attendees delivered public comments at the meeting, a few over Zoom but most in person. *Id.* at 1-3. Only five of these speakers urged the school board to follow House Bill 1205. *Id.* Some commenters expressed their support for M.J. specifically, even by name, or described M.J.'s personal qualities. *Id.* at 1-3*; see also* Scaer Decl., ¶ 26; Stephen Decl. ¶¶ 11-13.

M.J. was the second commenter that evening and talked about "the many benefits the sport of soccer has had for her personally" and how House Bill 1205 "has essentially upended her life." Ex. C at 1. One of M.J.'s supporters discussed how she had "personally worked with [M.J.]" and found M.J. "to be a loved and cherished member of the community who deserves the right to play." *Id.* at 2. Another supported "[M.J.]'s desire to continue on her current team" and claimed that following House Bill 1205 would be "targeting" M.J. for "discriminatory" treatment, "undermin[ing] her access to equal-educational opportunities." *Id.* at 1. Other attendees named M.J. and spoke about "mak[ing] a positive, life-changing

6

and empowering memory for [M.J.]." *Id.* at 1-2. They "voiced a desire that [M.J.] be offered the same opportunities that other females in the district are allowed," and "spoke in support of [M.J.]" because it is allegedly "unfounded" that "allowing biological males to play on female sports teams runs a higher risk of serious injury." *Id.* at 1-2. With the exception of Plaintiff, everyone who wanted to publicly comment spoke for up to the full three minutes without interruption. Scaer Decl., ¶¶ 20, 22.

Beth Scaer was one of the last attendees to publicly comment. *See* Ex. C at 2. She intended to read aloud a New Hampshire Journal article discussing M.J.'s victory in girls' high jump to explain how the participation of M.J. and other post-pubescent male athletes in girls' sports creates a risk of injury to female players and places biological female athletes at a competitive disadvantage. *See* Ex. D; Scaer Decl., ¶¶ 28-30. Scaer prefaced her reading by contrasting the physique of the two plaintiffs in *Tirrell v. Edelblut* with M.J.'s physique; Scaer had seen all three in person earlier in spring 2024. Scaer Decl., ¶¶ 10, 24-25, 30.

Scaer noted that the *Tirrell* plaintiffs were small, prepubescent, and in her view did not present a major threat to girls' safety or competitive fairness. *Id.*, ¶¶ 25, 30. Scaer contrasted them with M.J., who has undergone male puberty and is nearly 6 feet tall, with considerable musculature. *Id.*, ¶¶ 24, 30. Scaer drew this comparison to argue that M.J.'s participation in girls' sports undermines fair competition and puts biologically female athletes at risk for physical and mental injury. *See id.*, ¶¶ 4, 30, 54. To make this point, Scaer gestured towards M.J., who was seated about ten

7

feet away, and told the audience to "look at him"; she then referred to M.J. as a "tall boy." Ex. C at 2; Scaer Decl., ¶ 31; Stephen Decl. ¶ 19.

Defendant Mastin interrupted Scaer immediately after she said "tall boy" and stopped Scaer from speaking further. Ex. C at 2; Scaer Decl., ¶ 32; Stephen Decl. ¶ 17. Mastin deemed Scaer's comment calling M.J. a "tall boy" in violation of the board's "no derogatory comments" policy. Ex. C at 2; Scaer Decl., ¶ 33; Stephen Decl. ¶ 18. Mastin ruled Scaer out of order, forfeited the remainder (approximately two and a half minutes) of Scaer's three minutes of speaking time, and threatened to have Scaer removed by the police if she did not stop talking. Ex. C at 2; Scaer Decl., ¶ 34; Stephen Decl. ¶ 18.

Audience members jeered and hissed while Scaer was speaking and applauded when Mastin interrupted her. Scaer Decl., ¶¶ 35-36; Stephen Decl. ¶¶ 20-21. Although the noise in the room made it difficult to hear Scaer, Mastin and the Kearsarge Regional School Board never attempted to quiet the disruptive crowd so that Scaer could be heard. Scaer Decl., ¶¶ 35-36; Stephen Decl. ¶¶ 20-21. Indeed, Mastin's interruption encouraged the crowd to grow louder. Scaer Decl., ¶¶ 36, 39; Stephen Decl. ¶¶ 20-21. Scaer sat down without ever completing her planned comments. *See* Ex. C at 2; Scaer Decl., ¶ 37. Then after the public comment period ended, the school board voted to reverse its earlier August 15 decision, defy state law, and permit M.J. to compete on the girls' soccer team. Ex. C at 3. M.J. played on

the Kearsarge varsity girls' soccer team throughout the fall 2024 season. Scaer Decl., ¶ 45.

Beth Scaer intends to and would publicly comment at future Kearsarge Regional School Board meetings, using language that Mastin and Kearsarge Regional School Board may find offensive and derogatory. *Id.*, ¶¶ 51, 53, 55-56. If given permission, Scaer intends to express herself in the same way that she did on August 29, referring to tall boys as "tall boys" or similar expressions and describing their physical appearances when relevant to school matters under discussion. *Id.*, ¶¶ 52-54. Scaer also refuses to use preferred pronouns and will state people's biological gender, even if Kearsarge Regional School Board considers this practice to be derogatory. *Id.*

In her future public comments, Scaer wishes to criticize Kearsarge Regional School District's policies or past actions regarding school matters. Those matters include biological males competing in girls' sports, the need for sex-segregated restrooms and locker rooms, how the school district handled issues relating to M.J.'s father's pedophilia conviction, and the school board's violation of First Amendment rights. *Id.*, ¶¶ 50-51, 54-56. To express to her viewpoint on these issues, Scaer would refer to specific people and use potentially derogatory language such as "sexual harassment," "trans cult," "angry mob," "hypocrisy," and "enabling pedophilia and grooming." *Id.*, ¶¶ 53-56.

9

Scaer believes, however, that Defendants will not allow her to express her viewpoints using the language that she wishes, because they believe her comments are offensive and violate the board's "no derogatory comments" policy. *Id.*, ¶ 57. If she were to speak as she wishes, Scaer believes she would again get interrupted, be prohibited from speaking, be threatened with police removal, and have her time forfeited. *Id.* Scaer also believes that if she were to speak as she wishes, Defendants would treat her in a manner that implicitly encourages other attendees to disrupt her comments by hissing, jeering, and similar noises, even though Policy BEDH forbids attendees from speaking out of turn or disrupting the person speaking. *Id.*, ¶¶ 18, 57, 60. As a result, Scaer has publicly commented at only one Kearsarge Regional School Board meeting (the October 24 meeting) since her silencing and she deliberately self-censored her comments at that meeting to avoid saying anything that she believed could be characterized as derogatory. *Id.*, ¶¶ 41-44, 47, 58.

Scaer finds it frustrating and degrading to have her comments cut short as they were on August 29, when other speakers were allowed to promote their viewpoints and express support of M.J. specifically. *Id.*, ¶ 60. To avoid a similar humiliating experience, Scaer is refraining from publicly commenting at Kearsarge Regional School Board meetings using the language that she wishes. *Id.*, ¶¶ 58, 61-62.

**ARGUMENT**

Courts should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

10

R. Civ. P. 56(a). A dispute of fact is genuine if a rational factfinder could resolve it in favor of either party and material if it has the capacity to change the outcome of the suit. *Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc.*, 126 F.4th 773, 779 (1st Cir. 2025). "Once the movant makes a preliminary showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to demonstrate, through factually specific proffers, that a trialworthy issue remains." *Id.*

I.    KEARSARGE REGIONAL SCHOOL DISTRICT'S "NO DEROGATORY COMMENTS" POLICY IS UNCONSTITUTIONAL IN EVERY GOVERNMENT FORUM.

A.    The First Amendment forbids Defendants from restricting public comments at Kearsarge Regional School Board's meeting in an unreasonable or viewpoint discriminatory manner.

Under the First Amendment, the "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). A limited public forum exists "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002) (cleaned up). Speech restrictions in such a forum "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.'" *McBreairty v. Sch. Bd. of RSU22*, 616 F. Supp. 3d 79, 93 (D. Me. 2022) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985)).

11

A public comment period at a school board meeting constitutes a limited public forum. *See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 & n.7 (1983) (listing a "school board meeting" as an example of a forum "created for a limited purpose"); *Hotel Emples.*, 311 F.3d at 545 (stating that "open school board meetings" are limited public fora); *McBreairty*, 616 F. Supp. 3d at 92 & n.13 (collecting cases). The Kearsarge Regional School District "provide[s] the opportunity for members of the public to comment on school district matters at all regularly scheduled Board meetings" so that the Board may "hear the wishes and ideas of the public." Ex. A at 2-3. Commenters must limit their speech to certain topics: "agenda items or other District matters (e.g., operations, budget, and other issues directly relating to the District's school policies, programs and operations.)." *Id.* at 4. Thus, the public comment session is a limited public forum for discussing school district matters.

Even if Kearsarge's public comment sessions were a nonpublic forum, the legal analysis would remain the same. Regulations restricting First Amendment expression in a nonpublic forum "must still be both viewpoint neutral and reasonable to be constitutional." *Del Gallo v. Parent*, 557 F.3d 58, 72 (1st Cir. 2009). "Regardless of how the [] forum should be classified," content-based restrictions must be reasonable and cannot discriminate on the basis of viewpoint. *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 97 (1st Cir. 2004); *see also Sutliffe v. Town of*

*Epping*, Civil No. 06-cv-474-JL, 2008 U.S. Dist. LEXIS 96179, at *26-*27 (D.N.H. Nov. 13, 2008), *aff'd*, 584 F.3d 314 (1st Cir. 2009).

B. Defendants discriminate against disfavored speech and petition on the basis of viewpoint.

Defendants' policy of forbidding commenters from "speak[ing] derogatorily about anyone or anything," Ex. C at 1, discriminates against viewpoints that Defendants find offensive. A restriction that targets speech is "viewpoint-based if it targets not subject matter, but particular views taken by speakers on a subject." *McCoy v. Town of Pittsfield*, 59 F.4th 497, 505 (1st Cir. 2023) (internal quotation marks omitted). "The essence of a viewpoint discrimination claim is that the government has preferred the message of one speaker over another." *McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004). "It is not the role of the State or its officials to prescribe what shall be offensive." *303 Creative LLC v. Elenis*, 600 U.S. 570, 601-602 (2023) (cleaned up).

"Derogatory" is just another word for "disparaging." *See Derogatory*, Merriam-Webster Dictionary, https://perma.cc/KZ8M-KCCB. And a ban on "disparaging" speech equates to a ban on "ideas that offend." *Matal v. Tam*, 582 U.S. 218, 223 (2017) (plurality opinion); *see also id.* at 249 (Kennedy, J., concurring). In fact, the Supreme Court has identified both "derogatory" and "disparaging" as terms targeting offensive speech. *Id.* at 223, 228–29 (plurality opinion); *id.* at 249 (Kennedy, J., concurring). But "[g]iving offense is a viewpoint." *Id.* at 243 (plurality

13

opinion); *see also id.* at 249 (Kennedy, J., concurring). So the board's policy against disparaging comments "discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 588 U.S. 388, 396 (2019) (internal quotation marks omitted).

Courts regularly invalidate policies banning offensive speech at school board meetings and similar fora. *See, e.g.*, *Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1334-35 (11th Cir. 2024) (school board policy forbidding "abusive" speech facially unconstitutional); *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893, 895 (6th Cir. 2021) (striking down ban on "abusive" or "antagonistic" speech at a school board meeting); *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126, 1131-33 (9th Cir. 2018) (striking down ban on "disparagement" in nonpublic forum); *Marshall v. Amuso*, 571 F. Supp. 3d 412, 422 (E.D. Pa. 2021) (holding that a policy allowing complimentary comments about individuals but not critical ones is viewpoint discrimination). That's because "[t]he First Amendment's viewpoint neutrality principle . . . protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses." *Tam,* 582 U.S. at 243 (Kennedy, J., concurring). For the government cannot "forbid certain words without also running a substantial risk of suppressing ideas in the process" and "banning the expression of unpopular views." *Cohen v. California*, 403 U.S. 15, 26 (1971). Yet Defendants' ban on derogatory speech does just that.

14

"The facial viewpoint bias in the law results in viewpoint-discriminatory application." *Brunetti*, 588 U.S. at 395. During the August 29 meeting, Defendants applied this policy to Beth Scaer, interrupting her and causing her to forfeit the remainder of her speaking time because Defendant Mastin deemed it offensive that Scaer called M.J. a "tall boy." Ex. C at 2. But Defendants did not prohibit all content about transgender athletics nor ban all personally identifying comments about students. They allowed other commenters to praise M.J.'s character, support him specifically and by name, oppose "targeting" M.J., and argue that M.J. had no biological advantage in sports that would create a risk of injury. Ex. C. at 1-3; *see also* Scaer Decl., ¶¶ 20-22, 26; Stephen Decl. ¶¶ 9, 11-13. Defendants singled out a particular position and form of argument about transgender athletics as unacceptable. This is viewpoint discrimination of the most obvious sort.

C. Defendants unreasonably undermine the purpose of the public comment period by preventing the public from effectively expressing their wishes and ideas about the school district matters under discussion.

Kearsarge Regional School District's "no derogatory comments" policy also unreasonably prevents Scaer and those who agree with her from expressing their position in the manner that they chose. This policy undermines "the purpose served by the forum." *Cornelius*, 473 U.S. at 806. In a forum designed for "constructive dialogue through the public's comments," reasonableness is "necessarily a more demanding test than in forums that have a primary purpose that is less compatible with expressive activity." *People for the Ethical Treatment of Animals v. Tabak*, 109

15

F.4th 627, 636 (D.C. Cir. 2024) (internal quotation marks omitted). A school board policy is unreasonable if it "actively obstructs a core purpose" of the meeting by making it "impossible, for speakers to adequately air their concerns." *Brevard Pub. Sch.*, 118 F.4th at 1337-38; *see also Pollak v. Wilson*, No. 22-CV-49-ABJ, 2024 U.S. Dist. LEXIS 229713, at *31 (D. Wyo. Oct. 25, 2024) (board policy that "interferes with the public's ability to communicate with their government" unreasonable).

Kearsarge Regional School District creates a forum for public comment at all school board meeting with the purpose of "hear[ing] the wishes and ideas of the public." Ex. A at 2. Public comment sessions "provide an avenue for any citizen to express interest in the schools" and exist to "[m]inimize the possibility of the Board making ill-advised, illegal, or improper rulings due to hasty action in the absence of adequate information and study." *Id.* at 1-2. Thus, "members of the public [may] provide input and comment at Board meetings" by speaking about "agenda items or other District matters (e.g., operations, budget, and other issues directly relating to the District's school policies, programs and operations.)." *Id.* at 3-4.

Kearsarge's decision about House Bill 1205 was the primary issue before the board on August 29 and the topic of all but one of the public comments delivered that evening. *See* Ex. C at 1-3. Commenters were allowed to express support for M.J. and state why they believed M.J.'s participation in girls' sports would not create an injury risk or competitive disadvantage. *Id.* at 1-2.

Defendants' policy and action, however, prohibited Beth Scaer from responding to these comments and arguing for her opposing position using language she believed would most effectively convey her point. Scaer's comment was germane to the topic under discussion, for she sought to express that allowing a "tall boy" like M.J. or other post-pubescent biological males to play girls' sports would be ill-advised, illegal, and a threat to girls' safety and competitive fairness. *See* Ex. C at 2; Ex. D; Scaer Decl., ¶¶ 4, 28-31, 52-54. By contrasting M.J. physically with the *Tirrell* plaintiffs, Scaer sought to advise the school board that M.J.'s participation is legally and morally different from the participation of the pre-pubescent *Tirrell* plaintiffs.

M.J.'s sex and physical appearance was relevant to school district matters under discussion at the meeting on August 29, and it continues to be relevant for as long as biological boys playing girls' sports or using bathrooms and locker rooms reserved for biological females remain issues. Thus, the school board's rule bans speech on an issue squarely within the forum's purpose, making it unreasonable under the First Amendment.

II.    KEARSARGE REGIONAL SCHOOL DISTRICT'S POLICY IS UNDULY VAGUE, GRANTING UNBRIDLED ENFORCEMENT DISCRETION TO SCHOOL OFFICIALS.

Defendants' policy is also inherently subjective, lacking sufficient implementation guidance and granting excessive enforcement discretion to school officials. The policy is both vague and incapable of reasoned application—two

interrelated reasons that invalidate the policy. *Cf. White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 205 (4th Cir. 2022) ("vagueness and imprecision" of policy demonstrates it is "incapable of reasoned application")

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A law can be "impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colora*do, 530 U.S. 703, 732 (2000) (citation omitted).

Likewise, a policy governing speech in a government forum must be sufficiently clear and objective to be "capable of reasoned application." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 23 (2018). The government "must be able to articulate some sensible basis for distinguishing what may come in from what must stay out." *Id.* at 16. "An indeterminate prohibition carries with it the opportunity for abuse, especially where it has received a virtually open-ended interpretation," so official discretion "must be guided by objective, workable standards," lest an official's "own politics may shape his views on what counts." *Id.* at 21-22. Thus, a policy is unconstitutional "if it fails to define key terms, lacks any official guidance, and vests too much discretion in those charged with its application." *Brevard Pub. Sch.*, 118 F.4th at 1332; *see also Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978

18

F.3d 481, 494, 497 (6th Cir. 2020) ("broadly phrased policy" using term with "opaque definition" unreasonable).[2]

Defendants' unwritten policy never defines "derogatory." Ex. C. at 1. Almost any criticism can be said to speak derogatorily "about *anyone* or *anything.*" *Id.* (emphasis added). The policy might prohibit comments disagreeing with a school rule, complaining about wasteful spending, or objecting to a decision of the board itself—because all those involve negative remarks about persons or things. Perhaps the school board intended the "no derogatory comments" policy to have some narrower meaning, only prohibiting certain categories of negative speech (although such a policy would still be unconstitutional viewpoint discrimination), but the language of the policy fails to make that narrower meaning clear.

Vacuous terms such as "derogatory" have "uncertain meanings [that] inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked" and thus chill speech. *Grayned*, 408 U.S. at 109 (cleaned up). On August 29, the school board's Chair did not even explain what part of Scaer's comment was "derogatory." Scaer Decl., ¶¶ 32-33, 42-44; Stephen

---

[2] Vagueness and unreasonableness due to excessive enforcement discretion overlap. In *Mansky*, the Supreme Court applied principles of vagueness to determine whether a speech regulation at a nonpublic forum was "unreasonable." 585 U.S. at 16-22. The Sixth, Eleventh, and D.C. Circuits have followed *Mansky*'s lead. *See Brevard*, 118 F.4th at 1332-33; *Suburban Mobility*, 978 F.3d at 494-95; *PETA*, 109 F.4th at 636. To the extent this distinction matters, Plaintiff's vagueness challenge should also be construed as challenging the policy's reasonableness.

Decl. ¶¶ 18-19. As a result, when Scaer publicly commented again, months later, she did not know what to self-censor and avoided saying anything that she thought might be construed as offensive. Scaer Decl., ¶¶ 41-44, 58. Yet the school board allowed supporters of M.J. to claim that "the thought" of people who favor House Bill 1205 "is rooted more in fear of the unknown" than in fact, that "targeting [M.J.] . . . is discriminatory in nature" and "contradicts the school district's founding values," and that obeying state law would be "giving in to the hatred of a few adults by bluntly canceling [M.J.]." Ex. C. at 1-2; *see also* Stephen Decl. ¶ 16. Why is calling Scaer, her husband, and those who agree with them hateful, bigoted, immoral, and ignorant not "derogatory," but calling M.J. a "tall boy" is? Nothing in the policy gives an objective or workable answer.

Kearsarge Regional School District has given commenters no notice about what its unwritten policy forbids and implicitly authorizes officials to enforce this policy discriminatorily.

III.    KEARSARGE REGIONAL SCHOOL DISTRICT'S POLICY SWEEPS OVERBROADLY, CHILLING VAST AMOUNTS OF PROTECTED SPEECH.

Defendants' policy is also overbroad. "Speech regulations may not "sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama*, 377 U.S. 288, 307 (1964). "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until

and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (internal quotation marks and citations omitted) (emphasis original). Prohibiting "words offensive to some who hear them [] sweeps too broadly" to be constitutional and "is easily susceptible to improper application." *Gooding v. Wilson*, 405 U.S. 518, 527-28 (1972) (cleaned up).

Defendants' written policy, Policy BEDH, forbids narrow, well-established categories of unprotected speech such as "defamatory statements" and "comments threatening bodily harm." Ex. A at 4. In contrast, the unwritten "no derogatory comments" policy bans a far wider category of comments—those that "speak derogatorily about anyone or anything." Ex. C. at 1. Because "derogatory comments" is a boundless category lacking "objective, workable standards," a school official's "own politics may shape his views on what counts." *Mansky*, 585 U.S. at 21-22. Indeed, Defendants seem to interpret their policy to permit them to censor any speech they dislike or that expresses a dissenting opinion unpopular to the majority—as Scaer's comments were. *See* Scaer Decl., ¶¶ 35-39; Stephen Decl. ¶¶ 9, 20-21; *cf. Hopper v. City of Pasco*, 241 F.3d 1067, 1079-80 (9th Cir. 2001) (city's ban on "controversial art" invited discriminatory enforcement "contingent upon the subjective reaction" of audience).

21

The overbroad "no derogatory comments" policy sweeps in vast amounts of protected expression. By implementing and enforcing this overbroad policy, Defendants deprive Scaer of her constitutional freedoms.

IV.    Scaer is entitled to nominal damages and a permanent injunction.

Scaer is entitled to nominal damages in the amount of $17.91 to compensate her for her injury when the Board enforced its unconstitutional policy against her. Nominal damages redress injuries when a plaintiff "cannot or chooses not to quantify that harm in economic terms." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021). Nominal damages are "appropriate in the context of a First Amendment violation." *Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 53 n.15 (1st Cir. 2010) (citations omitted). Indeed, "it is well established that an award of nominal damages is not discretionary where a substantive constitutional right has been violated." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (cleaned up) (collecting cases). The Court should thus enter judgment for Scaer for $17.91.

Likewise, Scaer is entitled to a permanent injunction, prohibiting Defendants from enforcing their "no derogatory comments" policy or discriminating against public comments on the basis of viewpoint or on the basis of content germane to the purpose of the meeting. A court must issue a preliminary injunction if "(1) the plaintiff has demonstrated actual success on the merits of its claims; (2) the plaintiff would be irreparably injured in the absence of injunctive relief; (3) the harm to the plaintiff from defendant's conduct would exceed the harm to the defendant accruing

from the issuance of an injunction; and (4) the public interest would not be adversely affected by an injunction." *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 50 n.15 (1st Cir. 2001). On the first factor, Scaer succeeds on the merits for the reasons discussed above. She suffers irreparable harm absent an injunction because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted).

Finally, "when the Government is the opposing party," courts "merge" the "balancing of the equities and analysis of the public interest together." *Doe v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021) (cleaned up). "[T]he issuance of an injunction promotes the public interest" whenever a plaintiff has "demonstrated that the enforcement of the [policy] against [her] is unconstitutional." *Young v. Town of Conway*, Civil No. 23-cv-00070-JL, 2025 U.S. Dist. LEXIS 95364, at *37 (D.N.H. May 20, 2025). "Protecting rights to free speech is *ipso facto* in the interest of the general public" as "First Amendment rights are not private rights . . . so much as they are rights of the general public." *Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 128 (D. Mass. 2003) (citation omitted). "To deprive plaintiff[] of the right to speak will therefore have the concomitant effect of depriving the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Sindicato Puertorriqueño de*

23

*Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) (cleaned up). Thus, all four

factors favor granting Scaer's requested permanent injunction.

CONCLUSION

This Court should grant Plaintiff's motion for summary judgment as to all

claims, declare the "no derogatory comments" policy unconstitutional, enter a

permanent injunction prohibiting Defendants from enforcing this policy or

otherwise discriminating against public comments on the basis of viewpoint or on

the basis of content germane to the purpose of the meeting, and award Scaer $17.91

in nominal damages for her past injury.

Dated: June 25, 2025

Respectfully submitted,

*/s/ Roy S. McCandless*
Roy S. McCandless
New Hampshire Bar No. 11850
ROY S. MCCANDLESS, ESQ., PLLC
125 North State Street
Concord, New Hampshire 03301
Tel: (603) 841-3671, Ext. 101
Fax: (603) 513-2799
roysmccandless@gmail.com

*/s/ Nathan J. Ristuccia*
Nathan J. Ristuccia*§
Virginia Bar No. 98372
Brett Nolan*
DC Bar No. 90014964
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW, Ste. 801
Washington, D.C. 20036
Tel: (202) 301-3300
Fax: (202) 301-3399
nristuccia@ifs.org
bnolan@ifs.org

**Pro hac vice*

*Counsel for Plaintiff*

_____

§ Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 25, 2025, a true and correct copy of the foregoing pleading was served via CM/ECF upon the counsel of record of all parties.

Executed under penalty of perjury.

Dated: June 25, 2025

<u>  s/Nathan J. Ristuccia          </u>